# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| HERMAN G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. CV 19-10849-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Herman G. ("Plaintiff") filed applications for Disability Insurance Benefit and Supplemental Security Income on July 25 and July 29, 2016, alleging disability beginning July 15, 2015. See Dkt. 16, Administrative Record ("AR") AR 153-59, 160-70.[1] After being denied by initial determination on December 29, 2016, see AR 88-92, Plaintiff requested and received a hearing

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

before an Administrative Law Judge ("ALJ") on November 16, 2018, see AR 32-55.

The ALJ issued an unfavorable decision on December 21, 2018. See AR 12-31. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date. See AR 17. At step two, the ALJ determined that Plaintiff had the severe impairments of "degenerative disc disease of the cervical spine with radiculopathy and stenosis, degenerative disc disease of the lumbar spine, bilateral knee impairments, osteoarthritis, obesity, diabetes mellitus, [and] hypertension." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 19.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with some additional limitations. See AR 20. At step four, the ALJ found that Plaintiff could not perform any past relevant work. See AR 25. At step five, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including mail clerk (DOT 209.687-026), office helper (DOT 239.567-010), and information clerk (DOT 237.367-018). See AR 26-27. Accordingly, the ALJ denied benefits. See AR 27.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of Social Security benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a

2

whole or if the ALJ applied the wrong legal standard." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

### III. DISCUSSION

### A. RFC Determination

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence. See Dkt. 21, Joint Stipulation ("JS") at 4-10. The ALJ assessed Plaintiff as retaining the RFC to perform light work with some limitations, including "standing and walking for four hours in an eight-hour workday." AR 20.

The RFC "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ must assess a claimant's RFC "based on all the relevant medical and other evidence." Id. § 416.945(a)(3). It is ultimately an administrative finding reserved to the Commissioner. See id. § 416.927(d)(2). A district court must affirm the ALJ's determination of a claimant's RFC if the ALJ applied "the proper legal standard" and "his decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff raises three arguments in challenging the ALJ's RFC determination. First, in a footnote, Plaintiff objects to the ALJ's assignment of "great weight" to the opinion of Dr. Vicente Bernabe because he was removed from the consultative examination panel in March 2017, 21 months before Plaintiff's hearing decision. See JS at 5 & n.1. Plaintiff argues that the ALJ should not have given any weight to Dr. Bernabe's opinion or the opinion of Dr. Frederick Cremona, a state agency physician who relied on Dr. Bernabe's opinion. See id.

3

Dr. Bernabe's removal, however, resulted solely from his demeanor and was entirely unrelated to the quality of his medical assessments. See Dkt. 25 at 2-3 (Declaration of Urmila Taylor). Plaintiff does not cite any legal support that a medical opinion should be stricken on this basis. To the contrary, the rare situations resulting in remand involved removal that called into question the substantive accuracy of the physician's opinion. See, e.g., Walters v. Colvin, 213 F. Supp. 3d 1223, 1231-32 (N.D. Cal. 2016) (remanding where consultative examiner's removal based on low quality of examinations "raise[d] serious questions about whether his opinions in this case are substantiated"). Plaintiff does not otherwise offer any specific objections to Drs. Bernabe's and Cremona's medical opinions.

Second, Plaintiff briefly argues that the ALJ should have arranged for an updated consultative examination in light of "recent MRIs." JS at 6. The ALJ primarily relied on three medical opinions, but also imposed additional restrictions based on subsequent knee MRIs that revealed some positive findings. Specifically, the ALJ noted that a June 27, 2018 MRI of Plaintiff's right knee revealed an oblique tear of the medial meniscus body and posterior horn, a sprain of the anterior cruciate ligament, chondromalacia patella, mild proximal patellar tendinosis, and a small baker's cyst. See AR 23. The ALJ also noted that June and September 2018 MRIs of Plaintiff's left knee revealed oblique tears of the posterior horn of the medial meniscus and small joint effusion. See id. Based on these findings, the ALJ further limited Plaintiff to four hours of standing and walking, occasional postural activities and use of foot pedals or controls with lower extremities, and no use of ladders, scaffolds, or ropes. See AR 23-24. Plaintiff faults the ALJ for playing doctor, but it is the ALJ's province to determine the RFC, not a physician. See 20 C.F.R. § 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th

4

Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). In any event, Plaintiff does not detail what other physical limitations follow from the recent MRI findings besides the limitations already listed in the RFC. The Ninth Circuit has rejected "any invitation to find that the ALJ failed to account for [a claimant's] injuries in some unspecified way." Valentine v. Comm'r, SSA, 574 F.3d 685, 692 n.2 (9th Cir. 2000).

Third, Plaintiff argues that the ALJ failed to properly consider his obesity in determining the RFC. See JS at 6-7. Plaintiff notes that his BMI of 47.22 is considered "extreme," and that his obesity exacerbated his knee issues such that the ALJ's assessment that Plaintiff could be on his feet for four hours of an eight-hour workday defies common sense. Id.

In evaluating obesity to determine a claimant's RFC, the ALJ's assessment "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02-01p (2002). Here, the ALJ found that Plaintiff's obesity was a severe impairment that, along with other considerations, warranted additional standing and walking limitations, postural limitations, and a prohibition against ladders, scaffolds, ropes, unprotected heights, and dangerous machinery. See AR 23-24. The ALJ also found, however, that Plaintiff's weight was within the functional limitations described, given that Plaintiff consistently exhibited normal gait, no edema, normal sensation, and full strength. See AR 22-24. Based on the record, the ALJ adequately considered Plaintiff's obesity in his RFC determination. Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of his obesity that the ALJ failed to consider. See Burch v. Barnhart, 400 F.3d 676, 683-84 (9th Cir. 2005).

Accordingly, the ALJ did not err in determining Plaintiff's RFC.

B.  **Subjective Symptom Testimony**

Plaintiff testified that he stopped working in November 2015 due to "incredible pain" in his back and legs. AR 35. Plaintiff estimated he could lift eight to ten pounds and walk for approximately twenty to thirty minutes before needing to sit for twenty to thirty minutes. See AR 37, 39-40. Plaintiff was prescribed Norco and hydrocodone, which he takes sparingly because he does not like the effects of the medication. Plaintiff indicated that he was scheduled for a second left knee surgery to repair a torn meniscus in January 2019 and planned to have right knee surgery six months later for the same condition. Plaintiff explained that twenty years prior to the hearing he had a rod placed in his left leg, which affects his pain.

Plaintiff testified that he lives in a house with his family. He is able to drive but does not believe he could drive long distances without resting due to back and leg spasms. See AR 41. He takes his mother to the store about three times a week and his father to the market and doctors' appointments. See AR 41-42. Plaintiff does not do yardwork, housework, or laundry, or cook for himself. See AR 42, 46-47. He believes he is only able to remain active four to five hours a day and he must lay down for the rest of the day. To pass time, Plaintiff stays home and watches television. See AR 47.

The ALJ must make two findings before finding the claimant's pain or symptom testimony not credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). Second, if the claimant has produced that evidence, and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v.

6

Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). If the ALJ's subjective symptom finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

      Here, the ALJ discounted Plaintiff's testimony for a variety of reasons. First, the ALJ found that although Plaintiff was diagnosed with cervical radiculopathy, he continued to work. See AR 21. This finding is supported by substantial evidence. As one example, Plaintiff wrote in an Exertion Questionnaire that he was unable to carry more than shoes or clothes, and that he could no longer lift groceries or move the trashcans. See AR 203-05. In September 2014, however, Plaintiff told his physician that his work involved lifting heavy weights, "up to 50-80" pounds. AR 326; see also AR 322 (noting that his work involves "lifting weights"). An ALJ may consider a claimant's prior ability to work with an impairment when evaluating the alleged limiting effect of that impairment. See Gregory v. Bowen, 844 F.2d 664, 666-67 (9th Cir. 1988); Ruckdashel v. Colvin, 672 F. App'x 745, 746 (9th Cir. 2017) (upholding ALJ's credibility determination where claimant "worked full time with her impairments for several years without issue").

      Second, the ALJ found that Plaintiff refused to undergo certain treatment modalities, which suggested that his symptoms were not as pronounced as he alleged. See AR 21-22. This finding is supported by substantial evidence. For example, when Plaintiff first complained about radiating upper back pain, his physician prescribed physical therapy if his symptoms did not improve. See AR 327-28. However, when Plaintiff returned two months later alleging a pain level of nine out of ten, he refused physical

therapy and dietary consultation. See AR 322 ("Since pt doesn't want PT at this time rest for 2-3 days and continue local heat with meds."), 327. It is well settled that "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted).

 Third, the ALJ found that Plaintiff's testimony was inconsistent with the objective medical evidence. See AR 21-23. This finding is supported by substantial evidence. Plaintiff testified, for example, that due to his back issues he was unable to walk more than twenty to thirty minutes and had trouble getting dressed. But as the ALJ pointed out, Plaintiff's physical examinations routinely showed normal range of motion in the cervical spine. See AR 21 (citing AR 261, 318, 408-09). Plaintiff also consistently demonstrated no joint swelling and normal gait, muscle strength, muscle tone, sensation, and range of motion. See AR 326, 394, 557. Additionally, Plaintiff's orthopedist noted that his clinical symptoms were "in excess of what is found on the MRI scans." AR 420. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

 Plaintiff does not dispute the ALJ's findings related to his continued work activity, decision not to pursue certain treatments, and inconsistency with the objective medical evidence. Instead, Plaintiff focuses entirely on the ALJ's separate finding that Plaintiff was not credible because he received conservative treatment. See JS at 17-19. Because the ALJ provided at least two clear and convincing reason to discount Plaintiff's symptom testimony in addition to the lack of objective medical evidence, any error in the ALJ's other rationale to reject the Plaintiff's symptom testimony was harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (holding that an

error is harmless when it is "inconsequential to the ultimate nondisability determination").

## IV. CONCLUSION

The decision is the Social Security Commission is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: December 2, 2020

DOUGLAS F. McCORMICK
United States Magistrate Judge